**DEAN REALTY COMPANY,**
**Respondent,**

v.

**CITY OF KANSAS CITY,**
**Missouri, Appellant.**

**No. WD 60554.**

Missouri Court of Appeals,
Western District.

July 30, 2002.

Rehearing Denied Aug. 22, 2002.

As Modified Aug. 27, 2002.

Application for Transfer Denied
Oct. 22, 2002.

**84**

and clear of a lien asserted by the City. The City was asserting a lien to secure its cost of demolishing, prior to the sale of the property to Dean, a dangerous building located on the property.

In its sole point on appeal, the City claims that the trial court erred in granting summary judgment to Dean declaring, pursuant to § 141.570.2, that the demolition lien asserted by the City against the property was "barred and forever foreclosed" upon the confirmation by the circuit court of the sale of the property because § 141.570.2, contrary to the court's interpretation thereof, does not bar or foreclose a lien that attaches after the tax sale has been confirmed.

Affirmed.

John W. McClelland, Stephen A. Crystal, and Matthew D. Kitzi, Kansas City, MO, for respondent.

Galen Beaufort, City Attorney, Theodore T. Anderson, Assistant City Attorney, Kansas City, MO, for appellant.

Before HOWARD, P.J., and EDWIN H. SMITH and NEWTON, JJ.

EDWIN H. SMITH, Judge.

The City of Kansas City, Missouri (City), appeals the circuit court's summary judgment for the respondent, Dean Realty Company (Dean), on Dean's petition for declaratory judgment. In its declaratory judgment action, Dean sought a declaration of the court that, pursuant to § 141.570.2,[1] Dean received certain real estate (the property), which it purchased from Jackson County under the "Land Tax Collection Law," §§ 141.210—141.810, free

## Facts

On January 8, 1996, the City issued an administrative order to demolish a dangerous building, which was owned at the time by John J. and Lillian B. Duncan (the owners) and located at 3025–27 Holly, Kansas City, Missouri. The order ordered the owners to vacate the property and to abate the danger within thirty days. The order also notified the owners that if the building was not repaired or demolished within thirty days, the City would proceed to abate the danger, the cost of which would become a personal debt of the owners and result in a special assessment lien against the property. On March 5, 1996, a "Certificate of Existence of a Dangerous Building" was recorded with the Jackson County Director of Records.

At all times pertinent to this case, the City used a two-step billing process for the recovery of its costs incurred in abating a dangerous building, as authorized by

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

§ 67.410.3. Pursuant to § 56–541(a)[2] of the Kansas City, Missouri, Code of Ordinances, the first bill is issued to the owner of the property at the time of abatement and acts as a personal debt against the owner. Pursuant to § 56–541(b), if the personal debt bill remains unpaid for over sixty days, a second bill, a special assessment tax bill, is issued to the current owner of the property, which becomes a special tax assessment lien on the property upon its issuance.

On May 13, 1996, Jackson County instituted a land tax suit in the Circuit Court of Jackson County seeking a judgment for delinquent taxes on the property, the establishment of a lien, and foreclosure on the lien. A judgment was entered on the suit for the County on November 19, 1996, and the property was ordered sold by the Court Administrator of the Circuit Court of Jackson County. Dean purchased the property at a tax foreclosure sale on September 16, 1997. The sale was confirmed by the circuit court on December 16, 1997. A deed from the Court Administrator was issued to Dean on January 20, 1998, which was filed with the Director of Records on April 24, 1998.

In January of 1997, prior to the sale of the property to Dean and the confirmation of the sale by the circuit court, the City, after the then owners had failed to abate the danger as ordered, proceeded to have the building located on the property demolished at City expense. On April 18, 1997, pursuant to § 56–541(a), the cost of the demolition, $8,830, was billed to the owners of the property as a personal debt. On December 31, 1998, approximately one year after the sale of the property to Dean had been confirmed by the circuit court, as a result of the failure of the former owners

of the property to pay the cost of the demolition of the building, the City issued a special assessment tax statement to Dean. On March 2, 1999, the special assessment tax bill became delinquent.

On May 17, 2000, Dean filed a declaratory judgment action in the Circuit Court of Jackson County seeking a declaration of the court that it had purchased the property free and clear of the special tax assessment lien asserted by the City. On June 30, 2000, the City filed its answer, a counterclaim seeking to enforce the special tax assessment lien, and a motion to dismiss, which was overruled on August 16, 2000.

Dean filed its motion for summary judgment on May 18, 2001. The City filed its response on June 18, 2001. On June 20, 2001, the City filed its motion for summary judgment. On September 21, 2001, the trial court sustained Dean's motion and overruled the City's, finding that the material facts alleged in Dean's motion were not in dispute and that on those facts it was entitled to the declaratory relief it sought as a matter of law in that the lien asserted against the property by the City for the demolition of the dangerous building located on the property was foreclosed, by operation of law, upon the sale of the property to Dean.

This appeal follows.

### Standard of Review

Our review of the trial court's grant of summary judgment:

> is essentially *de novo.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The pro-

---

2. All ordinance references are to the KANSAS CITY, Mo., CODE OF ORDINANCES (1998), unless otherwise indicated.

priety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993) (citations omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 380.

When reviewing the trial court's grant of summary judgment, we:

> review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* at 376 (citations omitted).

## I.

■ In its sole point on appeal, the City claims that the trial court erred in granting summary judgment to Dean declaring, pursuant to § 141.570.2, that the lien asserted by the City against the property purchased by Dean was "barred and forever foreclosed" upon the confirmation by the circuit court of the sale of the property because § 141.570.2, contrary to the court's interpretation thereof, does not bar or foreclose a lien that attaches after the tax sale has been confirmed. Specifically, the City claims that its lien did not attach until after the confirmation by the circuit court of the sale of the property to Dean

such that § 141.570.2 did not apply to bar or foreclose its lien.

To be entitled to summary judgment under Rule 74.04,[3] the movant is required to show that: (1) there is no genuine dispute as to the material facts on which the movant is relying for summary judgment; and, (2) on the undisputed facts alleged, the movant is entitled to judgment as a matter of law. *ITT*, 854 S.W.2d at 380. Thus, where, as here, the movant is a claimant, to be entitled to summary judgment, the movant must allege in the motion for summary judgment undisputed facts establishing each and every element of the movant's claim. *Id.* at 381.

Dean, in its petition for declaratory judgment, alleged that the demolition cost incurred by the City in demolishing the dangerous building on the property in question constituted a right, title, interest, or claim of the City existing prior to the confirmation of the tax sale, and, therefore, the City was barred by § 141.570.2 from asserting such right, title, interest or claim against the property purchased by Dean at the tax sale. In its motion for summary judgment, Dean alleged that there was no dispute as to the fact that the City incurred the cost of demolishing the dangerous building located on the property prior to its sale by Jackson County to Dean and the confirmation of the sale by the circuit court, and that based on that fact and the application of § 141.570.2, Dean was entitled, as a matter of law, to the declaratory relief sought, that it purchased the property free and clear of all interests, rights, claims, and liens of the City. In its response to Dean's motion, the City did not dispute the facts alleged by Dean in its motion, but rather asserted

---

**3.** All rule references are to the Missouri Rules of Civil Procedure (2001), unless otherwise indicated.

that Dean was not entitled to judgment as a matter of law on those facts because § 141.570.2 did not apply to bar the City's lien in that it did not apply to liens that attached after the confirmation of the tax sale and that it was undisputed that the City's lien attached after the circuit court had confirmed the sale of the property to Dean. This is the same position that the City takes on appeal. Dean argues, however, that the lien in this case is without force or effect, as the underlying claim or interest on which it is based, the debt for demolition costs, was foreclosed by the application of § 141.570.2. Thus, the issue for us to decide is strictly a legal one: Does § 141.570.2, when applied to the undisputed facts of this case, work to bar the City's demolition lien on the tax sale property purchased by Dean? The answer is yes.

 To resolve the issue presented, we necessarily must interpret § 141.570.2. The primary rule of statutory construction is to ascertain the intent of the legislature by construing the words used in the statute giving them their plain and ordinary meaning. *Buttress v. Taylor*, 62 S.W.3d 672, 679 (Mo.App.2001). Courts lack the authority to read into a statute a legislative intent that is contrary to the intent made evident by giving the language employed its plain and ordinary meaning. *Id.* In the absence of any statutory definition, words used in a statute are to be given their plain and ordinary meaning. *Id.* When interpreting a statute, we are required to give meaning to each word, clause, and section of the statute whenever possible. *Id.* Using these principles of statutory interpretation to guide us, we turn to the statute in question.

Section 141.570.2 provides:

The title to any real estate which shall vest in any purchaser, *upon confirmation of such sale by the court,* shall be an absolute estate in fee simple, subject to right-of-ways thereon of public utilities on which tax has been otherwise paid, and subject to any lien thereon of the United States of America, if any, and *all persons,* including the state of Missouri, infants, incapacitated and disabled persons as defined in chapter 475, RSMo, and nonresidents *who may have had any right, title, interest, claim, or equity of redemption in or to, or lien upon, such lands, shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption,* and the court shall order immediate possession of such real estate be given to such purchaser; provided, however, that such title shall also be subject to the liens of any tax bills which may have attached to such parcel of real estate prior to the time of the filing of the petition affecting such parcel of real estate not then delinquent, or which may have attached after the filing of the petition and prior to sheriff's sale and not included in any answer to such petition, but if such parcel of real estate is sold to the land trust, the title thereto shall be free of any such liens to the extent of the interest of any taxing authority in such real estate; provided further, that such title shall not be subject to the lien of special tax bills which have attached to the parcel of real estate prior to November 22, 1943, but the lien of such special tax bills shall attach to the proceeds of the sheriff's sale or to the proceeds of the ultimate sale of such parcel by the land trust.

(Emphasis added.) The City reads the highlighted language of the statute to mean that only those liens that exist at the time of the circuit court's confirmation of the tax foreclosure sale are barred. In support of its interpretation, the City cites *Euclid Plaza Associates, L.L.C. v. African*

*American Law Firm, L.L.C.,* 55 S.W.3d 446, 448–49 (Mo.App.2001). There, the Eastern District of this court was required to interpret § 92.835.2,[4] containing the identical language used in § 141.570.2, except that the former references the "land reutilization authority," rather than the "land trust." Section 92.835.2 is part of "The Municipal Land Reutilization Law," § 92.705, governing the collection of delinquent and back real estate taxes in the City of St. Louis. Logically then, although located in different sections, given the fact that the language in question is essentially identical and pertains to the same subject matter, the same interpretation given to the language in the context of one section would apply to the same language in the other section. *See Schwartz v. Shamrock Dairy Queen,* 23 S.W.3d 768, 773 (Mo.App. 2000). In interpreting the language in question in § 92.835.2, the *Euclid* court stated:

> Section 92.835.2 describes the quantum of title that shall vest in the purchaser upon confirmation of the tax sale by the court. In addition, it indicates that anyone who previously had any interest in the property is barred and foreclosed of whatever interest that person possessed *before the confirmation.*

55 S.W.3d at 448–49 (citation omitted) (emphasis added). From this, it would appear then that, as the City asserts, only a right, title, interest, claim, lien or equity of redemption possessed by a person before the confirmation of the tax sale by the circuit court would be barred by § 141.570.2. Despite this fact, the City is still not entitled to the appellate relief it seeks.

Section 141.570.2, by its express terms, is not limited to just liens. The bar of the statute also extends to any right, title, interest, claim or equity of redemption in the tax sale property. Thus, in addition to extinguishing any lien that the City possessed at the time of the confirmation of sale, as to Dean's property, the statute would have also extinguished any right, title, interest, claim or equity of redemption possessed by the City at the time of confirmation, including the City's underlying right to satisfy the tax bill against the property, as provided in § 56–541, on which it relied for asserting its lien.

A lien on real estate for payment of a debt is a right to have the debt

---

4. Section 92.835.2 provides:

> The title to any real estate which shall vest in any purchaser, upon confirmation of such sale by the court, shall be an absolute estate in fee simple, subject to rights-of-way thereon of public utilities on which tax has been otherwise paid, and subject to any tax lien thereon of the United States of America, if any, and all persons, including the state of Missouri, minors, incapacitated and disabled persons, and nonresidents who may have had any right, title, interest, claim, or equity of redemption in or to, or lien upon, such lands shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption, and the court shall order immediate possession of such real estate be given to such purchaser; provided, however, that such title shall also be subject to the liens of any tax bills which may have attached to such parcel of real estate prior to the time of the filing of the petition affecting such parcel of real estate not then delinquent, or which may have attached after the filing of the petition and prior to sheriff's sale and not included in any answer to such petition, but if such parcel of real estate is sold to the land reutilization authority the title thereto shall be free of any such liens to the extent of the interest of any taxing authority in such real estate; provided further, that such title shall not be subject to the lien of special tax bills which has attached to the parcel of real estate prior to January 1, 1972, but the lien of such special tax bills shall attach to the proceeds of the sheriff's sale or to the proceeds of the ultimate sale of such parcel by the land reutilization authority.

satisfied out of the land, if not otherwise paid. *Deer Run Prop. Owners Ass'n v. Bedell,* 52 S.W.3d 14, 19 (Mo.App.2001) (*citing R.L. Sweet Lumber Co. v. E.L. Lane, Inc.,* 513 S.W.2d 365, 368 (Mo. *banc* 1974)). Thus, a lien cannot exist in the absence of the debt, the payment of which it secures. *Jackson v. Engert,* 453 S.W.2d 615, 617 (Mo.App.1970). In our case, it is undisputed that the City could not proceed against Dean personally for satisfaction of the demolition debt. Rather, the City, pursuant to § 56–541, was only authorized to satisfy its demolition debt against either the former owners of the property personally or the land, the payment of the debt being secured by a lien against the property. From the undisputed facts alleged in Dean's motion for summary judgment, this right of the City to proceed against the property for satisfaction of the City's demolition debt existed at the time of the circuit court's confirmation of the tax sale and as such that right was extinguished by operation of § 141.570.2. Because the City's right to satisfy its demolition debt against Dean's property was extinguished at the time of the circuit court's approval of the sale of the property to Dean, the lien which the City sought to assert against the property, predicated on that right, necessarily could not attach and was effectively barred. *Jackson,* 453 S.W.2d at 617. Thus, under our interpretation of the statute, the fact that the lien asserted by the City had not attached at the time of the court's confirmation of sale of the property, as the City asserts, was not controlling.

Our holding is in keeping with the purpose of the "Land Tax Collection Law," which would logically be the same as that for "The Municipal Land Reutilization Law." In that regard, in *Euclid,* the court stated:

> The MLRL was intended to make it easier for municipalities to sell property when owners were delinquent on taxes in order to convert land that was not producing taxes to land that would generate tax revenue for the city. It would logically be more difficult to sell the land if it were encumbered with leases or other interests contrary to those of the purchaser. The intent of the legislature to convey title free from all claims except public utilities' rights-of-way and federal tax liens would also be contradicted if such leases were to be honored.

55 S.W.3d at 449 (citation omitted). To agree with the City's argument, that although its right to ultimately satisfy its demolition debt against the land existed at the time of confirmation of sale by the circuit court, § 141.570.2 should not apply to bar the subsequent attachment of its lien securing the payment of the debt, would be to defeat the clear purpose of the statute and was not what was intended by the legislature.

Given our interpretation of § 141.570.2 and its application to the undisputed material facts of this case, it is clear that the City's lien could not attach such that as a matter of law Dean was entitled to summary judgment on its declaratory judgment action.

Point denied.

## Conclusion

The circuit court's summary judgment for Dean on its declaratory judgment action is affirmed.

HOWARD, P.J., and NEWTON, J., concur.